IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-256

| | |
|---|---|
| **KEVIN A. HINES**, **PAIGE HINES**, and **PARKER HINES**, <br><br> *Plaintiffs,* <br><br> v. <br><br> **CITY OF RALEIGH**; **RODNEY LYMAN WARNER, III,** *in his individual and official capacity*; **TAYLORE DALAS LEGGETT,** *in his individual and official capacity*; **ASHLEY STEWART,** *in her individual and official capacity;* **STEVEN HELEWSKI,** *in his individual and official capacity,* <br><br> *Defendants.* | **AMENDED COMPLAINT** |

COME NOW, Plaintiffs Kevin A. Hines, Paige Hines, and Parker Hines, through counsel and pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) and amend their Complaint in its entirety as follows.

## INTRODUCTION

1. This action is brought pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, federal laws, and North Carolina laws. Plaintiffs Kevin A. Hines ("Mr. Hines"), Paige Hines, and Parker Hines seek relief for the unlawful and false arrest of Mr. Hines on May 16, 2013 at Enloe High School by the individual defendants acting in their official capacity as police officers employed by Defendant City of Raleigh.

2. The humiliating, illegal arrest—which occurred when Mr. Hines was picking up his twin daughters, Paige and Parker, from school and was witnessed by his daughters, their friends, classmates, and teachers—caused Mr. Hines to suffer substantial and irreparable harm.

3. Defendants lacked probable cause to arrest Mr. Hines, violating his Fourth Amendment right to be free from unreasonable search and seizure. The unlawful arrest was also tortious under North Carolina common law. As a result of Defendants' unlawful actions, Mr. Hines has suffered significant economic and non-monetary damages. His daughters also suffered severe emotional distress as a result of the false arrest.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Kevin A. Hines is a citizen and resident of Wake County, North Carolina.

5. Plaintiff Paige Hines is a citizen and resident of Wake County, North Carolina.

6. Plaintiff Parker Hines is a citizen and resident of Wake County, North Carolina.

7. Defendant City of Raleigh (the "City") is a municipal corporation organized and existing pursuant to the laws of North Carolina. The City is vested with corporate powers and rights pursuant to N.C. Gen. Stat. § 160A-11, including the capacity to sue and be sued. At all times relevant to this action, the City acted through its managers, policymakers, and employees of the Raleigh Police Department (the "Raleigh PD"), and the acts, edicts, and practices of said persons represent the official policies of the City.

8. Upon information and belief, Defendant Rodney Lyman Warner, III ("Sgt. Warner") is a resident of Wake County, North Carolina. At all times relevant to this complaint, Sgt. Warner was employed as a police officer by the City of Raleigh. He is sued in his official capacity and his individual capacity.

2

Case 5:16-cv-00256-FL   Document 30   Filed 08/08/16   Page 2 of 16

9. Upon information and belief, Defendant Taylore Dalas Leggett ("Officer Leggett") is a resident of Johnston County, North Carolina. At all times relevant to this complaint, Officer Leggett was employed as a police officer by the City of Raleigh. He is sued in his official capacity and his individual capacity.

10. Upon information and belief, Defendant Ashley Stewart ("Officer Stewart") is a resident of Wake County, North Carolina. At all times relevant to this complaint, Officer Stewart was employed as a police officer by the City of Raleigh. She is sued in her official capacity and her individual capacity.

11. Upon information and belief, Defendant Steven Helewski ("Officer Helewski" and collectively, with Sgt. Warner, Officer Leggett, and Officer Stewart, the "Individual Officers") is a resident of Johnston County, North Carolina. At all times relevant to this complaint, Officer Helewski was employed as a police officer by the City of Raleigh. He is sued in his official capacity and his individual capacity.

12. This action arises under the Fourth and Fourteenth Amendments of the United States Constitution and North Carolina common law.

13. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States.

14. The state-law claims asserted in this action by Plaintiffs arise under North Carolina common law and are properly joined in this action under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

15. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b). Upon information and belief, all parties reside in this District, and all of the violations and harms giving rise to Mr. Hines's claims occurred in this District.

16. Upon information and belief, the City has purchased liability insurance or participated in a local government risk pool. To the extent the City or one or more of the Individual Officers sued in their official capacities claims immunity from suit, such immunity was waived pursuant to N.C. Gen. Stat. § 160A-485 to the extent the city and/or officials are indemnified by the insurance contract(s).

## FACTS

17. Mr. Hines is a product of, citizen of, and contributor to Raleigh and Wake County. He graduated from N.C. State University in 1998, with a degree in Engineering, and he lives with his wife and three children—including twin daughters Paige Hines and Parker Hines—in Apex, North Carolina.

18. Mr. Hines owns a successful business, also located in Apex, which markets team-affiliated cases and covers for digital accessories, such as smart phones and laptops. He also owns a consulting firm that performs engineering work for the United States government on a contract basis.

19. In May 2013, Plaintiffs Paige Hines and Parker Hines were sophomores attending Enloe High School.

20. On May 16, 2013, Mr. Hines pulled into the carpool lane in front of Enloe High School to pick up his daughters, who have since graduated as honors students.

21. Like other devoted parents, he was there to take his children home at the end of the school day. That day, however, was "Senior Prank Day." Rumor had it that there would be a water-balloon fight.

22. The Raleigh PD responded to the rumor by sending a contingent of officers, including the Individual Officers.

23. As Mr. Hines stood by his car, waiting for his daughters to come out of the building, he saw a commotion near the bus-loading area. The rumor mill had not disappointed. It was a water balloon fight.

24. As Mr. Hines watched, he saw a student—a short, thin, African-American boy who looked too young to be a senior—running with his backpack. He appeared to be trying to make it to his destination without getting hit by the water balloons.

25. As he ran, he was suddenly grabbed by a very large, white, Raleigh PD officer, who Mr. Hines later learned was Sgt. Warner.

26. Sgt. Warner grabbed the boy, put him in a choke hold, and forcefully slammed his head and shoulder into the concrete. He then picked the boy up and, again, used the force of his significant weight to slam the student's body into the concrete.

27. Mr. Hines could see that the student was not involved in the water balloon throwing. Instead, he was trying to avoid it altogether. Regardless, such treatment based on a water-balloon fight would have been unwarranted even of the students who were throwing balloons.

28. Mr. Hines, as a citizen and a parent, was alarmed by what he saw. He saw that a wrong was being committed by a very large, armed, uniformed officer upon a defenseless, undersized student, so he did what he would hope another parent would have done for his own child.

29. Mr. Hines spoke to a nearby teacher who suggested he speak to the principal.

30. The teacher used her key to unlock the door to the school and escorted Mr. Hines into the building to the main office.

31. The teacher then went back into the offices to retrieve the principal, but instead Sgt. Warner came into the lobby where Mr. Hines was waiting.

5

32. Mr. Hines recognized Sgt. Warner as the officer who had assaulted the boy and asked for his badge number. Mr. Hines notified Sgt. Warner that he wanted to speak with the principal or supervising officer on-site at the school. Sgt. Warner refused to give Mr. Hines any information.

33. Sgt. Warner instead approached Mr. Hines, towering over him. He berated Mr. Hines, calling him a "troublemaker" for attempting to complain to the principal about the force he had used against one of the principal's students.

34. Sgt. Warner refused to allow Mr. Hines to speak to the principal, physically blocked Mr. Hines's path to the principal's office, and demanded that Mr. Hines leave the school building immediately.

35. Mr. Hines told Sgt. Warner that he would leave, but he wanted to speak to either the principal or Sgt. Warner's supervising officer to lodge a formal complaint about Sgt. Warner's use of excessive and unwarranted force.

36. In response to Sgt. Warner's assurance that the supervising officer was on the way, and to cooperate with Sgt. Warner's order that he exit the building, Mr. Hines left and made his way to the exit with Sgt. Warner close behind.

37. As they were making their way to the exit, Sgt. Warner activated his police radio, said something in code that Mr. Hines could not understand.

38. Sgt. Warner's assurances to Mr. Hines that the supervising officer was on the way were a lie—a ruse by Sgt. Warner to get Mr. Hines to leave the building. As Mr. Hines later learned, Sgt. Warner himself was the Raleigh PD's supervising officer on-site that day.

6

39. As soon as he exited the building, Mr. Hines was physically detained by two uniformed Raleigh police officers. Upon information and belief, those two officers were Officer Stewart and Officer Helewski.

40. Upon information and belief, Officer Stewart and Officer Helewski were subordinates of Sgt. Warner, and had been called on the radio by Sgt. Warner.

41. Sgt. Warner also came out of the building. Under Sgt. Warner's direct supervision, the two uniformed officers threw Mr. Hines against a brick wall, handcuffed him, and arrested him for Second Degree Trespass. A photograph of Sgt. Warner, Officer Stewart, and Officer Helewski arresting Mr. Hines is attached hereto as **Exhibit A**.

42. Sgt. Warner did not stop there. He repeatedly instructed his subordinate officers to use their tasers on Mr. Hines. Mr. Hines could see that the officers looked confused, because Mr. Hines was cooperating and not resisting the arrest even though it was unwarranted and illegal.

43. Mr. Hines asked Sgt. Warner why a taser was necessary, since he was not resisting. The officers did not use a taser.

44. The Individual Officers then proceeded to parade Mr. Hines out in front of the school, in full view of teachers, parents, and students, including his two terrified daughters. They put him into a Raleigh police car.

45. Then, as if calculated to further degrade and humiliate him in front of friends, family, and professionals at the school to which he entrusted his children, the Individual Officers removed him from the first car and paraded him around again—still in handcuffs—and forced his daughters to retrieve his belongings, including his cell phone, from his pockets so that they could contact Mr. Hines's wife to inform her of what happened and so that she could come to do what Mr. Hines could no longer do—pick his daughters up from school. The officers then placed him

7

into a different police car. Upon information and belief, the second police car was driven by Officer Leggett.

46. Mr. Hines was taken to jail by Officer Leggett, booked, and confined for nearly ten hours before he was released on a $3,000 secured bond. As a condition of his release, he was not permitted on the premises of Enloe High School.

47. Officer Leggett is listed as the arresting officer on the Magistrate's Order.

48. Sgt. Warner is listed as a witness on the Magistrate's Order.

49. The criminal trespassing charges remained pending against Mr. Hines until they were dismissed approximately two weeks after the false arrest.

50. Following the incident, Mr. Hines registered a formal complaint with Raleigh PD. In a letter dated September 25, 2013, Raleigh PD informed Mr. Hines that it had determined that his allegation of false arrest and departmental rule violation was sustained. A true and correct copy of the letter is attached hereto as **Exhibit B**.

51. Mr. Hines also had to expend substantial time to obtain an expungement of the false arrest.

52. The water-balloon incident at Enloe High School, including Mr. Hines's arrest, was covered extensively by local and statewide news outlets, both television and print. The story also received national media attention. Mr. Hines's reputation—a good name earned over a lifetime as a citizen, husband, father, and small-business owner—was smeared.

53. Mr. Hines's business ventures are dependent on his goodwill and reputation for upstanding character (including his ability to maintain a government security clearance), which were put into question by the false arrest.

8

54. As a direct and proximate result of Defendants' conduct, Mr. Hines suffered a violation of his Constitutional rights, loss of his physical liberty, mental and psychological trauma and humiliation, and financial loss.

55. As a direct and proximate result of Defendants' conduct, including forcing them to retrieve belongings from their handcuffed father, Paige Hines and Parker Hines have suffered severe emotional distress. They were subject to humiliation at the hands of their teachers and fellow classmates as a result of the very public false arrest, their grades suffered, and they each experienced difficulty sleeping. Mr. Hines was not permitted on school property as a condition of his release from custody and, for the first time, was unable to attend his daughters' sporting events and other school functions.

## FIRST CLAIM FOR RELIEF
### (Violation of the Fourth Amendment – 42 U.S.C. § 1983)
### [Mr. Hines Against the Individual Officers]

56. The allegations in Paragraphs 1 through 55 are restated and incorporated as if fully set forth herein.

57. At all times relevant to the allegations in this Complaint, the Individual Officers were uniformed, acting within the scope of their employment with Raleigh PD, and acting under color of state law.

58. The Individual Officers arrested Mr. Hines on May 16, 2013 for second degree trespassing (N.C. Gen. Stat. § 14-159.13) without a warrant.

59. The arrest of Mr. Hines was made without probable cause; there was no evidence to warrant the belief of a reasonable officer that a second degree trespass had been or was being committed.

60. Mr. Hines suffered injuries as a direct and proximate result of the Individual Officers' illegal conduct.

61. Defendants acted with evil intent, recklessly, or with callous indifference to the federally protected rights of Mr. Hines. Therefore, Mr. Hines in entitled to punitive damages against Defendants.

**SECOND CLAIM FOR RELIEF**
**(False Imprisonment – State Law)**
**[Mr. Hines Against all Defendants]**

62. The allegations in Paragraphs 1 through 62 are restated and incorporated as if fully set forth herein.

63. The Individual Officers arrested Mr. Hines on May 16, 2013 for second degree trespassing (N.C. Gen. Stat. § 14-159.13) without a warrant and imprisoned him for nearly ten hours.

64. The arrest of Mr. Hines was made without probable cause.

65. The arrest of Mr. Hines was made without legal authority.

66. At all relevant times, the Individual Officers were employed by the City and acting within the scope of their employment. The conduct of the Individual Officers are imputed to the City pursuant to the doctrine of *respondeat superior*.

67. Mr. Hines suffered injuries as a direct and proximate result of the Defendants' tortious conduct.

68. Defendants acted maliciously, willfully, and wantonly in falsely arresting and imprisoning Mr. Hines. Mr. Hines is therefore entitled to punitive damages pursuant to N.C. Gen. Stat. § 1D-15.

10

## THIRD CLAIM FOR RELIEF
### (Assault– State Law)
### [Mr. Hines Against Sgt. Warner and the City]

69. The allegations in Paragraphs 1 through 68 are restated and incorporated as if fully set forth herein.

70. The Individual Officers arrested Mr. Hines on May 16, 2013 for second degree trespassing (N.C. Gen. Stat. § 14-159.13) without a warrant.

71. The arrest of Mr. Hines was made without probable cause.

72. The arrest of Mr. Hines was made without legal authority.

73. Mr. Hines fully cooperated while the Individual Officers made the unlawful arrest.

74. Sgt. Warner placed Mr. Hines in reasonable apprehension of an imminent harmful or offensive contact by his intentional offer to show violence to Mr. Hines by instructing his subordinates to use a taser against Mr. Hines.

75. At all relevant times, the Individual Officers were employed by the City and acting within the scope of their employment. The conduct of the Individual Officers is imputed to the City pursuant to the doctrine of *respondeat superior*.

76. Mr. Hines suffered injuries as a direct and proximate result of Sgt. Warner's and the City's tortious conduct.

77. Sgt. Warner and the City acted maliciously, willfully, and wantonly in assaulting Mr. Hines. Mr. Hines is therefore entitled to punitive damages pursuant to N.C. Gen. Stat. § 1D-15.

## FOURTH CLAIM FOR RELIEF
### (Battery – State Law)
### [Mr. Hines Against all Defendants]

78. The allegations in Paragraphs 1 through 77 are restated and incorporated as if fully set forth herein.

79. The Individual Officers arrested Mr. Hines on May 16, 2013 for second degree trespassing (N.C. Gen. Stat. § 14-159.13) without a warrant.

80. The arrest of Mr. Hines was made without probable cause.

81. The arrest of Mr. Hines was made without legal authority.

82. Mr. Hines fully cooperated while the Individual Officers made the unlawful arrest.

83. In effecting the illegal arrest, the Individual Officers intentionally caused Mr. Hines to be touched in a harmful or offensive manner without his consent.

84. At all relevant times, the Individual Officers were employed by the City and acting within the scope of their employment. The conduct of the Individual Officers are imputed to the City pursuant to the doctrine of *respondeat superior*.

85. Mr. Hines suffered injuries as a direct and proximate result of the Defendants' tortious conduct.

86. Defendants acted maliciously, willfully, and wantonly in committing a battery upon Mr. Hines. Mr. Hines is therefore entitled to punitive damages pursuant to N.C. Gen. Stat. § 1D-15.

## FIFTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress – State Law)
### [All Plaintiffs Against All Defendants]

87. The allegations in Paragraphs 1 through 86 are restated and incorporated as if fully set forth herein.

88. The Individual Officers' conduct as alleged herein was extreme and outrageous.

89. The Individual Officers' conduct was intend to cause, or was reckless in disregard of the likelihood to cause, Mr. Hines and his daughters—Paige and Parker Hines, who watched from nearby—severe emotional distress.

90. The Individual Officers' conduct caused Mr. Hines to suffer severe emotional distress. Since the incident, he has suffered extreme embarrassment and humiliation, severe stress, difficulty sleeping, and anxiety.

91. The Individual Officers' conduct caused Paige Hines to suffer severe emotional distress. Following the incident, she suffered extreme embarrassment and humiliation, severe stress, and difficulty sleeping. Paige Hines's grades suffered as a result of the incident and her remaining years as a student at Enloe High School were greatly effected.

92. The Individual Officers' conduct caused Parker Hines to suffer severe emotional distress. Following the incident, she suffered extreme embarrassment and humiliation, severe stress, and difficulty sleeping. Parker Hines's grades suffered as a result of the incident and her remaining years as a student at Enloe High School were greatly effected.

93. At all relevant times, the Individual Officers were employed by the City and acting within the scope of their employment. The conduct of the Individual Officers is imputed to the City pursuant to the doctrine of *respondeat superior*.

13

94. Plaintiffs suffered injuries as a direct and proximate result of the Defendants' tortious conduct.

95. Defendants acted maliciously, willfully, and wantonly in intentionally inflicting emotional distress on Plaintiffs. Plaintiffs are therefore entitled to punitive damages pursuant to N.C. Gen. Stat. § 1D-15.

**SIXTH CLAIM FOR RELIEF**
**(In the Alternative, Negligent Infliction of Emotional Distress – State Law)**
**[All Plaintiffs Against All Defendants]**

96. The allegations in Paragraphs 1 through 95 are restated and incorporated as if fully set forth herein.

97. The Individual Officers owed Mr. Hines and his daughters, Paige and Parker Hines, a duty of care to act reasonably and to not inflict severe emotional distress.

98. It was reasonably foreseeable that the Individual Officers' conduct as alleged herein would cause Mr. Hines to suffer severe emotional distress.

99. The Individual Officers breached the duty of care owed to Mr. Hines.

100. The Individual Officers' conduct caused Mr. Hines to suffer severe emotional distress. Since the incident, he has suffered extreme embarrassment and humiliation, severe stress, difficulty sleeping, and anxiety.

101. The Individual Officers' conduct caused Paige Hines to suffer severe emotional distress. Following the incident, she suffered extreme embarrassment and humiliation, severe stress, and difficulty sleeping. Paige Hines's grades suffered as a result of the incident and her remaining years as a student at Enloe High School were greatly effected.

102. The Individual Officers' conduct caused Parker Hines to suffer severe emotional distress. Following the incident, she suffered extreme embarrassment and humiliation, severe

14

stress, and difficulty sleeping. Parker Hines's grades suffered as a result of the incident and her remaining years as a student at Enloe High School were greatly effected.

103. Plaintiffs suffered injuries as a direct and proximate result of the Defendants' tortious conduct.

104. Defendants acted maliciously, willfully, and wantonly in intentionally inflicting emotional distress on Plaintiffs. Plaintiffs are therefore entitled to punitive damages pursuant to N.C. Gen. Stat. § 1D-15.

**WHEREFORE**, Plaintiffs respectfully pray the Court:

1. Try Plaintiffs' claims before a jury on all issues so triable;

2. Grant judgment in favor of Plaintiffs against all Defendants on all claims;

3. Award Plaintiffs compensatory and punitive damages in an amount to be proven at trial;

4. Tax the costs of this action to Defendants, including, but not limited to, Plaintiffs' reasonable attorneys' fees as allowed by 42 U.S.C. § 1988 and other applicable law;

5. Award pre- and post-judgment interest as allowed by law; and

6. Grant any such other relief the Court deems just and appropriate.

This the 8th day of August, 2016

OF COUNSEL:
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.
2000 Renaissance Plaza
230 North Elm Street (27401)
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:  (336) 373-8850
Facsimile:  (336) 378-1001

/s/ Kimberly M. Marston
Kearns Davis
kdavis@brookspierce.com
N.C. State Bar No.: 22014
Kimberly M. Marston
kmarston@brookspierce.com
NC State Bar No.: 46231
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been served on all parties to this action by electronic delivery via CM/ECF to the following attorneys of record:

>Hunt K. Choi
>Deputy City Attorney
>City of Raleigh
>PO Box 590
>Raleigh, NC 27602
>*Attorney for Defendant City of Raleigh*
>
>Dan M. Hartzog
>Katelyn W. McCombs
>Dan M. Hartzog, Jr.
>Cranfill Sumner & Hartzog, LLP
>PO Box 27808
>Raleigh, NC  27611-7808
>*Attorneys for Defendant Rodney Lyman Warner, III*
>
>Cathleen M. Plaut
>Hedrick Gardner Kincheloe & Garofalo, LLP
>4131 Parklake Ave., Suite 300
>Raleigh, NC  27612
>*Attorney for Defendant Taylore Dalas Leggett*

This the 8th day of August, 2016.

>/s/ Kimberly M. Marston
>Kimberly M. Marston
>kmarston@brookspierce.com
>NC State Bar No.:  46231